### EDWARD DAIGLE *v.* METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY
### (AC 19529)

Hennessy, Pellegrino and Daly, Js.

Argued June 12—officially released October 17, 2000

*Ronald F. Ochsner*, for the appellant (plaintiff).

*D. Lincoln Woodard*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The plaintiff, Edward Daigle, appeals from the judgment of the trial court awarding him damages in a personal injury action. On appeal, he claims that the court improperly (1) granted the defendant's motion in limine precluding the introduction of evidence of his lost wages and lost earning capacity, (2) denied his motion for a mistrial on the basis of an inadvertent reference to the word "handcuff" by the defendant's counsel during closing argument to

the jury, (3) awarded him economic damages[1] reduced to the percentage of his disability caused by the motor vehicle accident at issue, (4) failed to instruct the jury that the defendant's counsel made a misleading argument regarding apportionment of economic damages and (5) denied his motion to set aside the verdict and for additur on the basis of the jury's failure to award him future noneconomic damages. We affirm the judgment of the trial court.

The following facts are relevant to a resolution of this appeal. The plaintiff was involved in two separate automobile accidents that occurred on June 5, 1993, and September 16, 1995. Thereafter, he commenced two separate actions against Metropolitan Property & Casualty Insurance Company, his insurance carrier and the defendant in this action, to recover damages for injuries to his neck and back stemming from the accidents. The first action was brought on an underinsured motorist theory, the second, on an uninsured motorist theory. The defendant admitted that the tortfeasors were negligent, but contested the causal relationship

---

[1] The plaintiff refers to his economic damages as "special damages." "In the mid-1980s, the legislature rewrote the tort recovery provisions of our civil system in successive legislative enactments known together as Tort Reform. As a result of the latter of these enactments, No. 87-227 of the 1987 Public Acts, the trier of fact in a personal injury action must break down its award of damages into two categories: economic damages and noneconomic damages. Economic damages are defined as 'compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages.' General Statutes § 52-572h (a) (1). Noneconomic damages are defined as 'compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering.' General Statutes § 52-572h (a) (2). For the most part, therefore, 'economic damages' are akin to special damages, and 'noneconomic damages' are akin to general damages." *Childs* v. *Bainer*, 235 Conn. 107, 123, 663 A.2d 398 (1995) (*Berdon, J.*, dissenting). Accordingly, we refer to all of the "special damages" claimed by the plaintiff as "economic" damages.

between the accidents and the injuries claimed, as well as their extent, there being evidence that the plaintiff suffered from a preexisting condition and a prior injury that the accidents merely aggravated.

Because of the identity of the parties and the similarity of the injuries, the actions were consolidated for trial. Liability was conceded by the defendant, and jury verdicts for the plaintiff on the issue of damages were rendered in both cases. The verdict in connection with the 1993 accident, which is the subject of the present appeal,[2] awarded the plaintiff $8000. Of that amount, $6000 was for past economic damages and $2000 was for past noneconomic damages. No award was made for future noneconomic damages despite evidence from the plaintiff's physician that, following the accidents, he suffered from a permanent partial disability to his back of 14 percent.[3]

After the jury had been charged, the plaintiff filed a motion for a mistrial on the ground that the defendant's counsel had improperly mentioned the word "handcuff" during his closing argument. The motion was denied. The plaintiff's subsequent motion to set aside the verdict as to the damage award and for additur also was denied. This appeal from the judgment of the trial court awarding the plaintiff damages in the 1993 lawsuit followed.

I

The plaintiff first claims that the court improperly granted the defendant's motion in limine precluding the introduction of his income tax records as documentary evidence to substantiate his claim of lost wages and lost earning capacity. He contends that he was a self-employed general contractor at the time of the acci-

---

[2] A separate verdict was rendered in the 1995 action from which the plaintiff did not appeal.

[3] The evidence at trial also established a preexisting spinal condition.

dents and that due to his injuries, he was compelled to hire other people to perform work that he alone previously had performed.

"The standard to be used to review a trial court's decision on the relevance and admissibility of evidence is abuse of discretion." (Internal quotation marks omitted.) *State* v. *Markeveys*, 56 Conn. App. 716, 718, 745 A.2d 212, cert. denied, 252 Conn. 953, 749 A.2d 1203 (2000). It is a well established principle of law that the trial court has wide discretion to determine the relevance of evidence and that the court's rulings will not be disturbed on appellate review absent abuse of that discretion. See *State* v. *Mann*, 56 Conn. App. 856, 857, 747 A.2d 19, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000); see also *Baughman* v. *Collins*, 56 Conn. App. 34, 35, 740 A.2d 491 (1999), cert. denied, 252 Conn. 923, 747 A.2d 517 (2000). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Provost*, 251 Conn. 252, 257, 741 A.2d 295 (1999), cert. denied, 531 U.S. 822, 121 S. Ct. 65, 148 L. Ed. 2d 30 (2000).

In the present case, the plaintiff offered tax returns to substantiate the increase in his business expenses, yet the records he sought to introduce also showed an increase in his net income for each year after the accidents. "In assessing damages in a tort action, the trier is not concerned with possibilities but with reasonable probabilities." (Internal quotation marks omitted.) *Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 360, 374 A.2d 1047 (1977). "A party who seeks to recover damages . . . [on the ground of lost earnings or earning capacity] must establish a reasonable probability that his injury did bring about a loss of earnings, and must afford a basis for a reasonable estimate by the trier, court or jury, of the amount of that loss." (Internal

quotation marks omitted.) *Bombero* v. *Marchionne*, 11 Conn. App. 485, 489, 528 A.2d 396, cert. denied, 205 Conn. 801, 529 A.2d 719 (1987). Here, because the plaintiff's tax returns showed an *increase* in net income after the accidents, they could not provide a basis for a reasonable estimate by the jury of an alleged *loss* in wages or earning capacity due to his injuries. See id. We therefore conclude that the plaintiff's claim was not substantiated by the evidence he sought to introduce and that the trial court did not abuse its discretion by granting the defendant's motion in limine. See *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 314, 714 A.2d 686 (1998).

## II

The plaintiff next claims that the court improperly denied his motion for a mistrial on the basis of an inadvertent use of the word "handcuff" by the defendant's counsel, despite the court's prior instruction that the parties not mention the word "handcuff" in the presence of the jury. The plaintiff concedes that the reference was unintentional, but argues that it irreparably compromised the credibility of his testimony at trial.

The following additional facts are necessary for a resolution of this claim. In 1991, the plaintiff was arrested and his wrist was injured as a result of being handcuffed. He subsequently brought a complaint against the police, and a deposition in that action was used in the present case to document the preexisting injury to his wrist. Thereafter, the court ruled that neither party would be permitted to mention the word "handcuff" in discussing the plaintiff's previous wrist injury because of potential prejudicial inferences. The defendant's counsel, however, inadvertently mentioned the word "handcuff" in his closing remarks. The plaintiff's attorney moved for a mistrial, claiming that use of the word had irreparably prejudiced his client, but the court, stating that it did not believe that the jury

would be tainted by what it characterized as a slip of the tongue, denied the plaintiff's motion. Nonetheless, before accepting the verdict, the court polled the jury members to determine whether the "handcuff" remark had entered into their deliberations, and they replied that it had not.

"In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999).

In the present case, the plaintiff concedes that the defendant's counsel did not mention the word "handcuff" intentionally. The transcripts also disclose that the error was a minor slip which, in the context of the entire argument, was unlikely to leave a lasting impression on the jury. Furthermore, to satisfy itself, as well as the parties, that the plaintiff had not been prejudiced, the court polled the jury members prior to accepting the verdict to determine if the remark had influenced their deliberations, and they replied that it had not. Accordingly, we conclude that inadvertent use of the word "handcuff" by the defendant's counsel did not compromise the plaintiff's credibility and that the court did not abuse its discretion in denying the plaintiff's motion for a mistrial. See id., 535–36.

### III

The plaintiff next claims that the jury improperly applied the law by reducing the award of economic damages to the percentage of his disability caused by the 1993 accident. He claims that the defendant's counsel proposed a mathematical formula in his closing argu-

ment that the jury improperly used to calculate the award. Because this claim was not raised at trial, the plaintiff seeks review pursuant to the plain error doctrine. See Practice Book § 60-5.

The following additional facts are necessary to our resolution of the plaintiff's claim. At trial, the defense offered the deposition testimony of Michael Halperin, an orthopedic surgeon who had treated the plaintiff and had performed back surgery on him after the accidents. Halperin originally issued a 14 percent permanent disability rating to the plaintiff of which he attributed one quarter to the 1993 accident, one quarter to the 1995 accident and the remaining one half to a preexisting back condition. Halperin later amended his opinion by attributing 50 percent of the plaintiff's disability to his preexisting condition, 25 percent to a work-related injury occurring in 1988 that Halperin was not aware of when making his original estimate, and 25 percent divided equally between the accident in 1993 and the accident in 1995.

In their closing arguments, counsel for the plaintiff and the defendant asked the jury to base the damage award on different theories. The plaintiff's counsel urged that all of the medical expenses associated with the plaintiff's back surgery and recovery be awarded as damages in the 1993 action. Defense counsel suggested that damages in the 1993 action be awarded on the basis of a mathematical formula corresponding to the formula offered by Halperin, which would result in a recovery amounting to only one eighth of the plaintiff's medical expenses.

The court instructed the jury that "[i]t matters not that the injured party may have had a previous disability or whether the injured person suffers from an ailment that was received and was receiving medical treatment before this negligent act which occurred. Your role is

to determine what injuries were caused to the plaintiff as a result of the negligent acts. Those injuries may be more serious to the plaintiff, who has suffered from an underlying condition prior to the incident which is the subject of this trial, than if the injuries had occurred to a person who was completely healthy before the negligence occurred. The plaintiff, therefore, is entitled to recover full compensation for any and all damages proximately resulting from the defendant's negligence even though you find his injuries to be more serious than they would otherwise have been because of any previous history. Thus, the defendant under law in Connecticut is required to take the plaintiff as he finds him and that is the law."

Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines . . . that the decision is otherwise erroneous in law. . . ." Review under the plain error doctrine, however, is reserved for "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Perry*, 58 Conn. App. 65, 68, 751 A.2d 843 (2000).

General Statutes § 52-216b provides in relevant part: "(a) In any civil action to recover damages resulting from personal injury . . . counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical formulae are articulated during closing arguments . . . the trial court shall instruct the jury that the sums or mathematical formulae articulated are not evidence but only arguments and that the determi-

nation of the amount of damages to be awarded, if any, is solely the jury's function."

In the present case, the defendant's counsel suggested in his closing argument that the jury use a mathematical formula, as permitted by § 52-216b (a), to assist in calculating the damage award. Both the defendant's counsel and the court also reminded the jury, as required by § 52-216b (b), that the formula was not evidence, and that it was solely the jury's function to determine the amount of the damage award. The defendant's counsel specifically stated in his closing argument, "I want to go through . . . [the documents] with you and even adopt Dr. Halperin's scenario if you think that is reasonable and you want to use that formula." Later, he stated, "you may want to work these numbers differently but . . . this is just what I did to come up to arrive at what I could figure out to be a fair figure and a way of compensating him for the things relating to the accident. . . . . Now, you can look at Dr. Halperin's reports and make your own decisions . . . ."

While charging the jury, the court also instructed that "[n]othing that the attorneys said . . . in their summation is binding upon you unless you agree with it." The court further stated: "I remind you again as I reminded you earlier and I reminded you a couple of days before, the attorneys as they addressed you during voir dire, during the initial arguments to you, the presentation to you and the arguments again, that is not evidence. How you determine the facts to be is again your sole province. During the closing arguments, you heard certain figures being utilized by both the plaintiff and the defendant. Again, you are not bound by those figures as they were presented to you." Accordingly, the court properly instructed the jury that the mathematical formula was part of the defendant's argument, and the jury was free to consider the formula, as well as any of the other

arguments presented by either party, in determining the damage award.

The jury's decision to rely on the suggested formula and to apportion the medical expenses in accordance with the percentage of disability attributed to the 1993 accident by the plaintiff's physician was also reasonable. The decision was consistent not only with the court's instruction that the plaintiff could recover for damages proximately resulting from the tortfeasors' negligence, but also with the evidence that the injuries requiring medical attention arose from multiple sources. Accordingly, we conclude that the jury properly applied the law and that it was not plain error for the court to accept the jury's award of economic damages that was based on a mathematical formula apportioning the plaintiff's disability. See *State* v. *Perry*, supra, 58 Conn. App. 69.

### IV

The plaintiff next claims that the court should have instructed the jury that the defendant's counsel made a misleading argument when he suggested using the mathematical formula to apportion the economic damage award. The plaintiff contends that the defendant's argument substantially prejudiced the jury and again seeks review of his unpreserved claim under the plain error doctrine.

As we previously have stated, § 52-216b (a) specifically permits the counsel for any party to articulate a mathematical formula during the closing argument to determine the amount of past and future economic and noneconomic damages. Had the court instructed the jury that the defendant's counsel made a misleading argument by referring to a mathematical formula, as the plaintiff requests, it clearly would have violated the statutory rule. Accordingly, the court's failure to instruct the jury that the defendant's counsel made a

misleading argument did not constitute plain error. See id.

V

The plaintiff finally claims that the damage award was inadequate, and contrary to the law and the evidence, and that the court improperly denied his motion to set aside the verdict and for additur. He claims that the verdict was inherently ambiguous because it did not include an award for future noneconomic damages to compensate for pain and suffering.[4] He also claims that the verdict did not conform to the jury instructions that he could recover full compensation for injuries due to the tortfeasors' negligence, even if the injuries were more serious than they might have been because of a preexisting condition.

"The trial court's refusal to set aside [a] verdict . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying [a motion] . . . to set aside [a] verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict they did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere

---

[4] The jury in this case did award the plaintiff compensation for past noneconomic pain and suffering. The plaintiff argues, nonetheless, that the failure to award future noneconomic damages resulted in a verdict that was inherently ambiguous.

within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Barrows* v. *J.C. Penney Co.*, 58 Conn. App. 225, 228–29, 753 A.2d 404, cert. denied, 254 Conn. 925, 761 A.2d 751 (2000), quoting *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995).

In a recently decided case, *Wichers* v. *Hatch*, 252 Conn. 174, 745 A.2d 789 (2000), our Supreme Court discussed the test that a trial court should use in deciding whether to set aside a verdict awarding economic damages but no noneconomic damages,[5] and stated that "the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assump-

[5] In *Wichers*, the court reconciled the perceived inconsistencies that may have been spawned by its prior rulings in *Johnson* v. *Franklin*, 112 Conn. 228, 152 A. 64 (1930), overruled, *Wichers* v. *Hatch*, 252 Conn. 174, 745 A.2d 789 (2000); *Malmberg* v. *Lopez*, 208 Conn. 675, 546 A.2d 264 (1988); and *Childs* v. *Bainer*, supra, 235 Conn. 107. In *Johnson*, in which the jury awarded all of the requested special damages, now designated as economic damages, and zero damages for pain and suffering, now designated as noneconomic damages, the court set aside the verdict as "manifestly inadequate." See *Johnson* v. *Franklin*, supra, 232. From that decision, a per se rule appears to have evolved that jury verdicts would be inadequate as a matter of law if economic, but no noneconomic, damages were awarded. The *Johnson* rule also was applied where a jury found liability but zero damages. See *Malmberg* v. *Lopez*, supra, 675. In *Childs*, however, the Supreme Court did not apply the per se rule of *Johnson*, since the jury in that case awarded only 19 percent of the economic damages claimed by the plaintiff and, therefore, the award of zero noneconomic damages was not deemed "manifestly inadequate"; *Childs* v. *Bainer*, supra, 118; as was the case in *Johnson*. In *Wichers*, the court expressly overruled *Johnson*, and held that an award of economic damages and zero noneconomic damages is now to be tested "in light of the circumstances of the particular case before it." *Wichers* v. *Hatch*, supra, 188.

tion that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do.

"As we previously have stated, although the trial court has a broad legal discretion in this area, it is not without its limits. Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." (Citations omitted; internal quotation marks omitted.) Id., 188–89.

In this case, the evidence presented at trial raised serious questions regarding causation of the plaintiff's injuries, which were similar in effect to the disabilities caused by his preexisting condition and the injuries received in his other reported accidents. For example, the plaintiff testified that he could no longer run, bowl or hunt due to his 1993 and 1995 injuries, yet he previously testified as to similar limitations in the depositions of other cases, before the two accidents occurred. He also testified that the back injury he received in 1988 was resolved following treatment at the hospital, but medical records and his deposition in the related

action revealed continuing complaints until 1992 that were virtually identical to his back complaints after the 1993 and 1995 accidents. Furthermore, the plaintiff's testimony was inconsistent as to whether the 1993 or the 1995 accident was more responsible for aggravating his back.

Consequently, the jury in this case reasonably could have interpreted the conflicting evidence and testimony to mean that the 1993 accident would not result in any greater future pain to the plaintiff than the pain caused by his preexisting condition or his other accidents. We therefore conclude that there was a reasonable basis in the evidence for the jury's verdict. Id., 189.

As for the claim that the verdict did not conform to the jury instructions that the plaintiff could recover full compensation for injuries due to the tortfeasors' negligence, the jury used a mathematical formula to allocate damages precisely *because* it wanted to determine what portion of the plaintiff's injuries was due to the 1993 accident. In light of the fact that the plaintiff suffered from a preexisting condition, and was also injured in two other accidents in 1988 and 1995, we conclude that the jury's decision to apportion the damages conformed to the court's instructions.

Accordingly, the court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict and for additur.

The judgment is affirmed.

In this opinion the other judges concurred.