# DAWNE HUNTE *v.* AMICA MUTUAL INSURANCE COMPANY
## (AC 21076)

Lavery, C. J., and Flynn and Daly, Js.

Argued October 25, 2001—officially released March 5, 2002

*Laurence V. Parnoff,* for the appellant (plaintiff).

*Steven L. Seligman,* with whom, on the brief, was *Cynthia M. Barlow,* for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Dawne Hunte, appeals from the judgment of the trial court in favor of the defendant, Amica Mutual Insurance Company, in this action seeking the recovery of underinsured motorist benefits. On appeal, the plaintiff claims that the trial court improperly (1) rendered judgment for the defendant after the jury returned a verdict for the plaintiff on her breach of contract claim, (2) failed to grant an additur or, in the alternative, to grant the plaintiff's motions to set aside the verdict and for a new trial on the breach of contract claim, and (3) directed the verdict for the defendant on the plaintiff's bad faith claim. We disagree and affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. On February 15, 1994, the plaintiff was injured when her automobile collided with the automobile of Rafael Jimenez (tortfeasor). At the time of the accident, the plaintiff was insured under an automobile

insurance policy issued by the defendant, which policy provided the plaintiff with underinsured motorist coverage. As compensation for her injuries, the plaintiff received a total of $27,822.60; the tortfeasor paid the plaintiff $20,000, the total amount of available coverage under his policy, and the defendant paid the plaintiff $7822.60 in basic reparations benefits. Thereafter, the plaintiff sought additional compensation under the underinsured motorist provision of her own insurance policy with the defendant.

When the defendant failed to make payment of the underinsured motorist benefits pursuant to the terms of the policy, the plaintiff filed a complaint setting forth claims for breach of contract, bad faith failure to pay benefits, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq.

The court granted the defendant's motion to bifurcate the trial of the breach of contract claim from the trial of the bad faith and CUTPA and CUIPA claims. After the trial on the breach of contract claim, at which medical evidence was introduced to prove that the plaintiff suffered permanent partial injuries to her neck and back, the jury returned a verdict in favor of the plaintiff and awarded her $19,405 in damages. The $19,405 award was comprised of $8455 in economic damages and $10,950 in noneconomic damages.

Subsequently, the defendant filed a motion for judgment notwithstanding the verdict. It claimed that the amount of damages awarded to the plaintiff by the jury was less than the amount that the plaintiff already had received for her damages from the tortfeasor and the defendant collectively and, therefore, that it was entitled to judgment on the breach of contract claim pursuant to this court's holding in *Fahey* v. *Safeco Ins. Co.*

*of America,* 49 Conn. App. 306, 714 A.2d 686 (1998). The plaintiff filed a motion asking the court either to assess an additur or, in the alternative, to set aside the verdict and to grant a new trial. The court granted the defendant's motion for judgment notwithstanding the verdict on the breach of contract claim. Although the court did not file a written memorandum of decision, it noted on the defendant's motion that it was granting the motion "pursuant to *Fahey* v. *Safeco Ins. Co. of America,* [supra, 306]." On that same day, the court denied the plaintiff's motion to set aside the verdict and for additur. Again, although there is no written memorandum of decision, the court wrote on the plaintiff's motion that it denied the motion because "[i]n view of the plaintiff's past history there was evidence to support the verdict. There was no plain and palpable injustice so as to denote that some mistake was made in the application of legal principles. *Purzycki* v. *Fairfield,* 244 Conn. 101, 106–107, 708 A.2d 937 (1998). The plaintiff's credibility was seriously damaged by her prior inconsistent statements."

A trial was also held on the plaintiff's bad faith and CUTPA and CUIPA claims. At the close of the plaintiff's evidence as to those claims, the court granted the defendant's motion for a directed verdict on the plaintiff's bad faith claim. Subsequently, the court also granted the defendant's motion for judgment on the plaintiff's CUTPA and CUIPA claims. This appeal followed.

I

The plaintiff first claims that the court improperly rendered judgment in favor of the defendant on the breach of contract claim, despite the fact that the jury returned a verdict for the plaintiff, albeit in an amount that was less than the total amount that she already had recovered. We disagree.

This court explained in *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 309, that "[t]he purpose of underinsured motorist coverage is to protect the named insured . . . from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) See also General Statutes § 38a-336. Its "purpose . . . is to place the insured in the *same* position as, but *no better* position than, the insured would have been had the underinsured tortfeasor been fully insured. . . . [U]nderinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Fahey* v. *Safeco Ins. Co. of America*, supra, 309–10; see also General Statutes § 38a-335 (c) ("[i]n no event shall any person be entitled to receive duplicate payments for the same element of loss").

In *Fahey*, the plaintiff was seeking underinsured motorist benefits from his own insurer. Prior to trial, the plaintiff had received $100,000 from the tortfeasor, which was the total amount of the tortfeasor's insurance coverage. The plaintiff then sought underinsured motorist benefits from his insurer. The insurer admitted liability, and the case was tried to a jury on the issue of damages alone. The jury returned a verdict in favor of the plaintiff in the amount of $90,064.77. The court then rendered judgment in favor of the defendant. It concluded that because the plaintiff already had received compensation in the amount of $100,000, an amount that was in excess of the value that the jury had placed on his damages, the plaintiff was not entitled to additional compensation by way of underinsured motorist benefits. The plaintiff appealed, and this court affirmed the judgment of the trial court. We held that the plaintiff would have received an impermissible double recovery in violation of both § 38a-335 (c) and the public

policy of this state if the court had rendered judgment in favor of the plaintiff in the amount of the $90,064.77 jury verdict because the plaintiff would then have received $190,064.77 in compensation for damages that the jury had valued at $90,064.77. *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 312.

In this case, as in *Fahey*, the jury returned a verdict in favor of the plaintiff but in an amount that was less than the amount of compensation that the plaintiff already had received. Here, the jury determined that the plaintiff's damages totaled $19,405. The plaintiff, however, already had received $27,822.60 in compensation from the tortfeasor and the insurer for the same injuries. Accordingly, the compensation she already had received exceeded the jury's determination of the appropriate amount of damages by $8417.60. We, therefore, conclude that the court properly rendered judgment in favor of the defendant because to do otherwise would have resulted in an impermissible double recovery in favor of the plaintiff.

The plaintiff also claims that it was inequitable for the court to render judgment in favor of the defendant on her breach of contract claim because the defendant's answers to certain of the breach of contract allegations were untruthful. She claims that as a result of the defendant's untruthfulness, she was forced to incur costs that she would not otherwise have had to incur had the defendant responded truthfully. Specifically, the plaintiff finds fault with the defendant's claims that it had "insufficient knowledge with which to respond" and its leaving of the plaintiff to her proof as to paragraphs four and six, which alleged: "4. On February 15, 1994, while the aforesaid policy of insurance was in full force and effect, the plaintiff . . . sustained bodily injuries when a vehicle collided with the car which she was operating"; and "6. The plaintiff was legally entitled to recover damages from the underinsured motorist as the

collision and the resulting injuries were caused by the negligent operation of the aforesaid underinsured highway vehicle." We decline to review this issue on appeal.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5 . . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Citations omitted; internal quotation marks omitted.) *Brehm* v. *Brehm*, 65 Conn. App. 698, 702–703, 783 A.2d 1068 (2001).

In the present case, it is impossible for us to determine whether the plaintiff's claim that it was inequitable for the court to render judgment in favor of the defendant was ever raised or addressed by the trial court because the record does not contain a written memorandum of decision on this issue or a signed copy of an oral decision from which this court can make that determination. "It is the responsibility of the appellant to provide an adequate record for review." Practice Book § 61-10; see also *Hartford* v. *Pan Pacific Development (Connecticut), Inc.*, 61 Conn. App. 481, 488, 764 A.2d 1273, cert. denied, 256 Conn. 913, 772 A.2d 1126 (2001). We conclude that in the present case, the record is inadequate for review because we have not been provided with a written memorandum of decision or a transcribed copy of an oral decision signed by the trial court with respect to that claim and, accordingly, we decline to review it. See, e.g., *Conforti* v. *Christie*, 59 Conn. App. 280, 281, 756 A.2d 330, cert. denied, 254 Conn. 942, 761 A.2d 759 (2000). To do otherwise would "promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." (Internal quotation marks omitted.) *Brehm* v. *Brehm*, supra, 65 Conn. App. 703.

## II

The plaintiff next claims that the court improperly failed to grant an additur or, in the alternative, to set aside the jury's verdict on the breach of contract claim. We disagree.

Before we address the plaintiff's claim on the merits, we set forth the appropriate standard of review of a trial court's denial of a motion for additur and a motion to set aside a verdict. "The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 35, p. 158. "In reviewing the action of the trial court in denying [a motion] . . . to set aside [a] verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict they did. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 476–77, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001).

"The verdict should be disturbed only by considerations of the most persuasive character, as where the verdict shocks the sense of justice or the mind is convinced that it is in fact entirely disproportionate to the injury. . . . The evidence offered at trial must be given the most favorable construction to which it is reasonably entitled in support of the verdict . . . . Only under the most compelling circumstances may the court set aside a jury verdict because to do so interferes with a litigant's constitutional right in appropriate cases to have issues of fact decided by a jury. . . . The amount

of damages to be awarded is a matter particularly within the province of the jury." (Citations omitted; internal quotation marks omitted.) *Shea* v. *Paczowski*, 11 Conn. App. 232, 233–34, 526 A.2d 558 (1987).

The plaintiff first claims that the jury's award of $10,050 in noneconomic damages was inadequate on its face because both the plaintiff and the defendant introduced medical evidence that showed that the plaintiff had sustained some degree of permanent impairment to the neck and back. The plaintiff further claims that the fact that the defendant itself paid more than $7000 over the amount that the jury ultimately awarded as damages demonstrates that the verdict was inadequate and that it must be the product of bias, prejudice or confusion. We disagree.

"It is the jury's right to consider evidence, draw logical deductions and make reasonable inferences from facts proven. . . . It may accept or reject the testimony of any witness . . . and determine the weight to be given the evidence. . . . This is true whether the testimony is that of laypersons or experts." (Citations omitted; internal quotation marks omitted.) Id., 234. "Furthermore, a parsimonious jury award is not inadequate as a matter of law." (Internal quotation marks omitted.) *Trumpold* v. *Besch*, 19 Conn. App. 22, 32, 561 A.2d 438, cert. denied, 212 Conn. 812, 565 A.2d 538 (1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990).

On the basis of the evidence in this case, the jury could have found that the impairment to the plaintiff's neck and back was caused by the February 15, 1994 collision, or not. Although there was evidence that the plaintiff had sustained some degree of permanent impairment to her neck and back, the cause of the impairment was put in serious doubt by evidence that the plaintiff had a prior history of injury and pain in

those same parts of her body, which antedated the accident. Furthermore, as the court noted, the plaintiff's credibility was seriously damaged by her prior inconsistent statements relating to her injuries. We also note that despite her claims of continuing pain and suffering, the plaintiff herself testified that she has engaged in extensive physical activities, including gardening, home repair work, tennis, skiing and other activities since the time of the accident. Accordingly, the evidence does not lead us to the conclusion that "the jury's award did not fall somewhere within the necessarily uncertain limits of just damages, or that it shocked the sense of justice." Id. We, therefore, conclude that the court did not abuse its discretion in refusing to set aside the verdict or to assess an additur.

Second, the plaintiff claims that the verdict was the result of prejudice due to the fact that certain of the questions that the defendant's counsel posed to the plaintiff on cross-examination were asked solely to suggest to the jury that the plaintiff was partially responsible for the collision and the defendant had not raised comparative negligence as a special defense. Again, we disagree.

It is true that counsel for the defendant did ask the plaintiff about the speed at which she was driving and the amount of time that elapsed between the time she first saw the tortfeasor's automobile and the time of impact between the two vehicles. Contrary to the plaintiff's claim that those questions were asked solely to suggest culpability, we conclude that the questions may have been asked to impeach the plaintiff's credibility and ability to recollect past events and to present additional evidence to the jury about whether her claimed injuries resulted from the collision. The questions may also have been asked to assess the force of the impact and whether the plaintiff had time to brace herself before impact. Further, counsel for the plaintiff did not

object to those questions. We also note that if the cross-examination was intended to suggest culpability, the jury did not lend much credence to it for that purpose because it found the defendant liable and awarded the plaintiff damages. We conclude that the verdict in the present case was not the result of prejudice and, therefore, the court did not abuse its discretion in refusing to set it aside for that reason.

### III

Finally, the plaintiff claims that it was improper for the court to direct the verdict for the defendant on her bad faith claim. We disagree.

"A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Johnson* v. *North Branford,* 64 Conn. App. 643, 645–46, 781 A.2d 346, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

The plaintiff contends that the defendant's untruthful responses to paragraphs four and six of her claim for breach of contract and the questions that the defendant's counsel asked the plaintiff during cross-examination at the trial on the breach of contract claim was conduct that constituted bad faith on the part of the defendant, which conduct was sufficient to avoid a directed verdict on her claim for bad faith. We disagree.

For the plaintiff to recover for bad faith she had to *allege and prove* that the defendant engaged in conduct "design[ed] to mislead or to deceive . . . or a neglect

or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . ." (Internal quotation marks omitted.) *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 320, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995). We conclude that the plaintiff in the present case did neither.

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint. . . . A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Sergi*, 38 Conn. App. 829, 841–42, 664 A.2d 795 (1995).

We do not countenance answers to a complaint that improperly put facts in issue. In her claim for bad faith, the plaintiff alleged that the defendant failed to perform its contractual and statutory duties in good faith because it wilfully and wantonly refused to enter into arbitration with the plaintiff to determine the amount of her damages. The court, *Nadeau, J.*, however, had previously sustained the defendant's objection to the plaintiff's motion to compel arbitration and, accordingly, the plaintiff's bad faith claim could not succeed on the ground that the defendant refused to arbitrate. The plaintiff did not allege that the defendant's answer and cross-examination constituted bad faith, and we fail to see how she could have done so at the time that the complaint was filed because the conduct had not yet occurred.

Additionally, we note that the court may have limited the evidence that the plaintiff introduced at trial to prove her bad faith claim to the evidence that tended

to prove the allegations she made in her complaint. Again, however, we cannot determine if the evidence was so limited or the reason for the court's directed verdict on the bad faith claim because there was no written memorandum of decision and no pertinent transcript of the trial provided to us. Accordingly, we decline to engage in any further review of this claim.

The judgment is affirmed.

In this opinion the other judges concurred.