SEBASTIANO FILECCIA *v.* NATIONWIDE PROPERTY
AND CASUALTY INSURANCE COMPANY
(AC 25974)
(AC 26228)

Lavery, C. J., and Bishop and McLachlan, Js.

Argued September 15—officially released December 6, 2005

*Sebastiano Fileccia,* pro se, the appellant-appellee (plaintiff).

*Jon Berk,* with whom, on the brief, was *Patty G. Swan,* for the appellee-appellant (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Sebastiano Fileccia, appeals from the judgment awarding him $6148.48 in damages, rendered by the trial court following a jury trial. The defendant, Nationwide Property and Casualty Insurance Company, also has appealed from the court's judgment. In the first appeal, the plaintiff claims that the court improperly denied his motions to set aside the verdict and for additur because the damages award, which consisted of economic damages but no noneconomic damages, was inconsistent with the evidence. In the second appeal, the defendant claims that the court improperly denied its motion for judgment notwithstanding the verdict because the plaintiff failed to prove his claim for underinsured motorists benefits.[1] We agree

---

[1] The jury verdict was returned on September 3, 2004. The defendant filed its motion for judgment notwithstanding the verdict on September 9, 2004, and the plaintiff filed his motions to set aside the verdict and for additur on October 5, 2004. At a hearing held on October 12, 2004, the court heard argument on the plaintiff's motions, but deferred argument on the defendant's motion. The court indicated that it considered the defendant's motion unnecessary, given the parties' stipulation that a verdict such as the one returned by the jury would result in no payment from the defendant to the plaintiff. See part II. On November 2, 2004, the court denied the plaintiff's motions and rendered judgment on the jury's verdict. The plaintiff filed his appeal on November 12, 2004.

On December 21, 2004, the defendant filed a motion to open the judgment, claiming that the court had not ruled on its motion for judgment notwithstanding the verdict. At a January 13, 2005 hearing, the court reiterated its view that the defendant's motion for judgment notwithstanding the verdict was superfluous. Nevertheless, it granted the motion to open and explicitly denied the motion for judgment notwithstanding the verdict. The defendant then filed a separate appeal on January 28, 2005.

with both of the parties' claims and reverse the judgment of the trial court.

The following facts and procedural history are relevant to the appeals. On December 17, 1999, the plaintiff was involved in a motor vehicle accident. The plaintiff was driving northbound on Franklin Avenue in Hartford when another vehicle, traveling westbound on Standish Street, cut out in front of him and the two vehicles collided. The plaintiff sustained injuries and, thereafter, sought and received medical treatment, including physical therapy, from various providers. After receiving a settlement payment of $20,000 from the operator of the other vehicle, which, apparently, exhausted the limits of that operator's insurance coverage,[2] the plaintiff brought this action against the defendant, who is his insurer, seeking underinsured motorists benefits.

In his complaint, the plaintiff alleged that he had suffered multiple injuries in the accident, specifically, a sprain or strain of the lumbar spine, a pinched sciatic nerve causing pain in his left leg, multiple bodily trauma and a herniated L4-L5 disc. He alleged further that those injuries had caused him physical pain and discomfort and had negatively impacted his ability to enjoy life's activities.[3]

---

Normally, an appeal filed prior to a ruling on a motion for judgment notwithstanding the verdict would be premature, as the judgment is not yet final. See *Tough* v. *Ives*, 159 Conn. 605, 268 A.2d 371 (1970). Here, however, given the court's rendering of judgment in favor of the plaintiff on November 2, 2004, and its comments indicating that it considered a ruling on the defendant's motion for judgment notwithstanding the verdict unnecessary, we conclude that the court effectively denied the motion prior to the plaintiff's filing his appeal. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 480, 706 A.2d 960 (1998) (court's explicit refusal to consider postjudgment motions effectively was denial of those motions). Furthermore, although the court thereafter opened its judgment, because the judgment was not altered, the plaintiff's appeal was not rendered moot. See id., 483.

[2] Prior to trial, the parties stipulated to the fact of that payment.

[3] The plaintiff also alleged that he had suffered lost wages but ultimately did not pursue that claim. The record indicates that the plaintiff continued to work following the accident, although in a different position.

In early September, 2004, a jury trial was held at which the plaintiff and the defendant each introduced expert physician testimony regarding the plaintiff's injuries. Extensive medical records of the plaintiff also were introduced, including the results of two computerized axial tomography scans, also known as CT scans. The jury returned a verdict of $6148.48 in economic damages, an amount that represented the exact amount of the medical bills incurred by the plaintiff as a result of the 1999 accident. The jury, however, did not award any noneconomic damages for the plaintiff's alleged pain and suffering and loss of functioning.[4]

On September 9, 2004, the defendant filed a motion for judgment in its favor notwithstanding the jury's verdict. The defendant argued, in essence, that because the damages award did not exceed the amount already received by the plaintiff from the operator of the other vehicle, the plaintiff had failed to prove his claim for underinsured motorists benefits. On October 5, 2004, the plaintiff filed motions to set aside the verdict and for additur, arguing that the damages award was insufficient. The court denied both parties' motions and rendered judgment in favor of the plaintiff, awarding him the damages found by the jury. These appeals followed. Additional facts will be provided as necessary.

I

In the first appeal, the plaintiff claims that the court improperly denied his motions for additur and to set aside the jury's verdict. According to the plaintiff, the

[4] General Statutes § 52-572h (a) (1) defines economic damages as "compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages," and General Statutes § 52-572h (a) (2) defines noneconomic damages as "compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ."

jury's award of damages, which awarded all of the economic damages he sought but no noneconomic damages, was inconsistent and contrary to the evidence. He argues additionally that crucial evidence, which the defendant claims provides an adequate basis for the jury's award, was presented to the jury in an incomplete fashion. We agree with the plaintiff and conclude that, under the circumstances of this case, the court's denial of the motions was an abuse of discretion.

We first note our standard of review. "The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . In reviewing the action of the trial court in denying [a motion for additur and] . . . to set aside [a] verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did." (Internal quotation marks omitted.) *Mazzacane* v. *Elliott*, 73 Conn. App. 696, 699, 812 A.2d 37 (2002).

In passing on a motion to set aside a jury verdict, a trial court, like a juror considering the evidence, must draw upon its experience and knowledge of human nature, events and motives and evaluate the verdict in that context. *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 329–30, 789 A.2d 459 (2002). If the trial judge "finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or [was] governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial. . . . The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse." (Internal quotation marks omitted.) Id., 330.

Our Supreme Court has articulated a special standard for the review of verdicts like the one at issue here to

determine whether inconsistency renders them legally inadequate. Id. "In *Wichers* v. *Hatch,* 252 Conn. 174, 188, 745 A.2d 789 (2000), [the Supreme Court] held that trial courts, when confronted with jury verdicts awarding economic damages and zero noneconomic damages, must determine on a case-by-case basis whether a verdict is adequate as a matter of law." *Schroeder* v. *Triangulum Associates,* supra, 259 Conn. 330. "Under *Wichers,* the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue." (Internal quotation marks omitted.) Id. "The evidential underpinnings of the verdict itself must be examined," albeit with deference to the jury's findings. *Wichers* v. *Hatch,* supra, 189. "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work [its] will." (Internal quotation marks omitted.) Id.

Applying the foregoing standards, our Supreme Court has held that an award of "virtually all" of a plaintiff's claimed economic damages, with no accompanying noneconomic damages, demonstrated an inconsistency in the verdict; see *Schroeder* v. *Triangulum Associates,* supra, 259 Conn. 332; although it allowed that in a different case, such an award might be proper. Id., 334 n.5. In *Schroeder,* the jury found the defendant liable for the costs of the plaintiff's intrusive spinal fusion surgery, but awarded nothing for the pain and permanent disability that necessarily would accompany such a procedure. Id., 333. The Supreme Court concluded that the award was incongruous and held that the trial court

abused its discretion in failing to set aside the verdict. Id., 332.

Additionally, in several cases where jury awards of substantial economic damages with no or little accompanying noneconomic damages were sustained on appeal, evidence had been presented to show that the plaintiff had some preexisting condition. See, e.g., *Wichers* v. *Hatch*, supra, 252 Conn. 177; *Turner* v. *Pascarelli*, 88 Conn. App. 720, 729–30, 871 A.2d 1044 (2005); *Schettino* v. *Labarba*, 82 Conn. App. 445, 447, 844 A.2d 923 (2004); *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 478–79, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001). In those cases, it was held that the jury reasonably could have concluded that the prior condition was the cause of the pain alleged, rather than the tortious actions of the defendant. See *Wichers* v. *Hatch*, supra, 189–90; *Turner* v. *Pascarelli*, supra, 730; *Schettino* v. *Labarba*, supra, 449–50; *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 479; compare *Elliott* v. *Larson*, 81 Conn. App. 468, 840 A.2d 59 (2004) (court properly granted additur when jury awarded plaintiff economic damages of all medical expenses and lost wages claimed but no noneconomic damages, and no evidence presented that preexisting condition caused plaintiff's pain).

In the present case, the jury awarded the plaintiff $6148.48, an amount representing all of his medical expenses and the entire amount of economic damages sought. An itemized list of the charges comprising that total was submitted as an exhibit at trial along with corresponding invoices. The list includes, in addition to charges for the plaintiff's initial hospital visit, radiology services and doctors' visits, separate charges for physical therapy and pain medications.

The physical therapy records, which cover eighteen appointments in March through May, 2000, consistently

report both the plaintiff's subjective complaints of pain and the objective manifestations thereof as noted by the therapists. Treatments to reduce pain and muscle spasms, and to improve strength and mobility, also are indicated. Little to no improvement is noted throughout the plaintiff's treatment, with the exception of his final appointment when moderate improvement is indicated. At trial, although evidence of subsequent injuries sustained by the plaintiff in 2001 and 2002 was introduced, there was no evidence that he suffered from any preexisting conditions prior to the 1999 accident at issue in this case.

We conclude that under the circumstances, the jury's award of economic damages and no noneconomic damages is internally inconsistent and ought to have been set aside. In finding that the plaintiff, by virtue of the accident, had suffered an injury requiring treatments and medication, the purpose of which was to alleviate pain and to improve functioning, the jury necessarily found that he had experienced pain and decreased functioning. Accordingly, it should have awarded noneconomic damages to compensate him for that pain and decreased functioning. Moreover, insofar as there was no evidence suggesting that the plaintiff had any preexisting conditions, the jury could not have reasonably attributed these problems to a cause other than the accident.

The defendant argues that the jury properly could have credited evidence that undermined the plaintiff's claims of pain and dysfunction, mainly, the testimony of Edward Fredericks, a neurologist who conducted an independent medical evaluation of the plaintiff and testified for the defense.[5] Contrary to the opinions of

---

[5] Fredericks was retained by another insurance carrier to conduct an independent medical examination focusing on injuries sustained by the plaintiff in a later accident. He examined the plaintiff once, on January 13, 2003, and, at that time, did not have any of the medical records concerning the plaintiff's 1999 accident.

four physicians who had treated or examined the plaintiff following the 1999 accident and who, relying on the results of a March 8, 2000 CT scan, diagnosed him with a herniated L4-L5 disc,[6] Fredericks opined that the plaintiff in fact had not suffered that injury and, in short, was malingering. In support of his opinion, Fredericks cited a second CT scan performed on July 3, 2002, that reportedly showed no evidence of disc herniation. The defendant notes also that the plaintiff's orthopedist, Michael P. Kruger, when questioned about the apparent discrepancy between the March 8, 2000 and July 3, 2002 CT scan results, was unable to explain it. According to the plaintiff, however, the results of the later CT scan were presented to the jury in an incomplete and misleading way. After a review of the July 3, 2002 CT scan and the testimony at issue, we conclude that the plaintiff is correct and that it is likely that the manner in which this evidence was presented was confusing to the jury.

The July 3, 2002 CT scan report includes three paragraphs describing the results of the scan as to three different regions of the plaintiff's spine. Technical medical terminology is utilized, necessitating explanation from an expert. The first paragraph concerns L2-L3 and L3-L4; the second paragraph concerns L4-L5; and the third paragraph concerns L5-S1. The first and third paragraphs, but not the second, include the observation, "There is no evidence of disc herniation."[7] It is clear

_____

[6] The results of the March 8, 2000 CT scan, as well as reports from orthopedic specialist Michael P. Kruger, neurosurgeon Arnold J. Rossi, internist Murray I. Wellner and orthopedic surgeon Gerald J. Becker, opining that the plaintiff suffers from pain from a ruptured or herniated L4-L5 disc from the 1999 accident, were submitted into evidence.

[7] The second paragraph reads as follows: "There is a prominent bulge of the annulus at L4-L5. There is no evidence of lateralization. There are moderate degenerative changes of the facet joints and the ligamenta flava are thickened. There is a borderline to slight acquired central spinal stenosis at L4-L5. There is no evidence of foraminal stenosis." Although this court, like a lay jury, is not qualified to interpret the foregoing language, we note that a follow-up report from orthopedic surgeon Gerald J. Becker, which is among more than 200 pages of medical evidence submitted into the record, states,

from the transcripts of the testimony of Kruger and Fredericks that the defendant's counsel, when questioning the physicians about the report, directed them to the paragraph discussing L2-L3 and L3-L4 rather than the one discussing L4-L5, the region at issue in this case. That the jurors were influenced by this evidence, and likely confused, is apparent from the fact that while they were deliberating they sent notes to the court requesting to see Kruger's testimony, as well as the results of the July 3, 2002 CT scan.

We recognize that "[t]he existence of conflicting evidence limits the court's authority to overturn a jury verdict [and that] [t]he jury is entrusted with the choice of which evidence is more credible and what effect it is to be given." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 116, 663 A.2d 398 (1995). In this case, however, the plaintiff offered substantial evidence that he had suffered a pain producing injury, and the only significant countervailing evidence presented by the defendant to refute it was the testimony of Fredericks, which was tainted by the misleading portrayal of the July 3, 2002 CT scan and the inability of the plaintiff's physician to explain the supposed discrepancy between the two CT scans. Given that circumstance and the inconsistency in the verdict previously described, we conclude that the court's denial of the plaintiff's motions for additur and to set aside the verdict was an abuse of discretion.[8]

## II

In the second appeal, the defendant claims that the court improperly denied its motion for judgment not-

inter alia, that "[a] CT scan of 03/08/2000 demonstrates a moderately large left L4-5 disk herniation. *A repeat scan of 07/03/2002 demonstrates a more broad-based central herniation at L4-5.*" (Emphasis added.)

[8] We are aware of this court's recent decision in the case of *Smith* v. *Lefebre*, 92 Conn. App. 417, 885 A.2d 1232 (2005), but maintain that under the case-by-case analysis mandated by *Wichers* v. *Hatch*, supra, 252 Conn. 188, that case and the present one are distinguishable factually such that the correct result is reached in each.

withstanding the verdict. It argues that because the jury awarded the plaintiff only $6148.48 in damages, an amount that is less than the $20,000 he already had received in settlement from the tortfeasor, he failed to prove his claim for underinsured motorists benefits. We agree.

As previously mentioned, the plaintiff, before bringing this action against the defendant, received $20,000 in settlement from the operator of the other vehicle in the 1999 accident, apparently exhausting the limits of that operator's insurance coverage. Prior to trial, the parties stipulated to the fact of this payment and agreed further that any amount awarded to the plaintiff in the present action would be offset by the $20,000 payment.[9] The court's judgment, however, does not reflect this offset and states in conclusion that "it is adjudged that the plaintiff recover of the defendant $6148.48 in damages." The court denied the defendant's motion for judgment notwithstanding the verdict, wherein the defendant recounted the parties' stipulation and requested that the verdict be reduced to zero damages and that judgment be rendered in its favor.[10]

Typically, "[a]ppellate review of a trial court's refusal to render judgment notwithstanding the verdict occurs within carefully defined parameters. We must consider the evidence, and all inferences that may be drawn from the evidence, in a light most favorable to the party that

[9] Although the parties do not dispute the details of the stipulation and the transcript of the January 13, 2005 hearing on the defendant's motion for judgment notwithstanding the verdict indicates that it occurred, we note that there is no written stipulation in the court file, nor does the record on appeal include a transcript memorializing an oral stipulation.

[10] The court apparently did not find it necessary that the judgment be altered, opining that because "[t]he jury verdict did not exceed $20,000 . . . it is clear by way of the stipulation and understanding [between the parties] that there is no recovery to this plaintiff." The court further characterized the jury verdict as "technical" and reiterated that given the stipulation, "it is clearly understood that this plaintiff cannot recover that amount . . . ."

was successful at trial. . . . This standard of review extends deference to the judgment of the judge and the jury who were present to evaluate witnesses and testimony. . . . Judgment notwithstanding the verdict should be granted only if we find that the jurors could not reasonably and legally have reached the conclusion that they did reach." (Internal quotation marks omitted.) *Parker* v. *Slosberg,* 73 Conn. App. 254, 263, 808 A.2d 351 (2002). In some contexts, however, the court may render judgment notwithstanding the verdict "when the decisive question is one of law or when the claim is that there is insufficient evidence to sustain a favorable verdict." This is the case here, where there is no indication that the jury was aware of the $20,000 payment or was asked to take it into consideration when awarding damages.[11] "When there is a question of law, our review of the court's decision is plenary." *Florian* v. *Lenge,* 91 Conn. App. 268, 281, 880 A.2d 985 (2005).

The issue of offset in a case brought to secure underinsured motorists benefits, where the damages ultimately awarded by a jury do not exceed payments already received by the plaintiff from the tortfeasor,

---

[11] Leaving the matter of an offset to the court is consistent with Practice Book § 10-79, which provides that "[a]n insurer should raise issues of monetary policy limits, or credits for payments by or on behalf of third party tortfeasors, by special defense. When a jury determination of the facts raised by special defense is not necessary, the special defense shall not be submitted to the jury but, rather, shall be resolved by the trial court prior to the rendering of judgment." See also *Fahey* v. *Safeco Ins. Co. of America,* 49 Conn. App. 306, 310, 714 A.2d 686 (1998) ("in an underinsured motorist case [t]he jury's only task [is] to assign the appropriate level of damages arising from the [underinsured] motorist's tort" [internal quotation marks omitted]).

Here, in its fifth special defense, the defendant claimed that the policy it issued to the plaintiff "provided for uninsured/underinsured motorist coverage in the amount of $100,000.00 per person [with a] total [of] $300,000.00 per occurrence . . . and therefore the Plaintiff's recovery under said policy will be limited to said amount *less any applicable set offs and reductions authorized by law.*" (Emphasis added.)

has been addressed by this court on at least two occasions. See *Hunte* v. *Amica Mutual Ins. Co.*, 68 Conn. App. 534, 792 A.2d 132 (2002); *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 714 A.2d 686 (1998). In *Fahey*, an injured plaintiff received $100,000 from the tortfeasor and then brought an action seeking underinsured motorists benefits. *Fahey* v. *Safeco Ins. Co. of America*, supra, 307. The jury returned a verdict on the issue of damages in the amount of $90,064.77. Id., 308. The trial court concluded that due to the $100,000 recovery, the plaintiff already had received compensation in excess of his actual damages. Id. The plaintiff thus had failed to prove his claim for underinsured motorists benefits, and, therefore, the court rendered judgment in the defendant insurer's favor. Id.

Similarly, in *Hunte*, an injured plaintiff received a total of $27,822.60, consisting of $20,000 from the tortfeasor and $7822.60 in basic reparations payments from her insurer. *Hunte* v. *Amica Mutual Ins. Co.*, supra, 68 Conn. App. 536. After the insurer denied her claim for additional compensation under the underinsured motorists provision of the policy, she brought an action for, inter alia, breach of contract. Id. After a trial on that claim, the jury returned a verdict in favor of the plaintiff and awarded damages of $19,405. Id. Thereafter, the trial court granted the defendant's motion for judgment notwithstanding the verdict, wherein it had been argued that the jury award was less than the amount the plaintiff already had received, and, therefore, the defendant was entitled to judgment in its favor pursuant to *Fahey*. Id., 536–37.

In both cases, we upheld the trial court's ruling on appeal; id., 539; *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 312; reasoning that the effect of the court's decision was to prevent the plaintiff from receiving a double recovery. We explained that "[t]he purpose of underinsured motorist coverage is to protect

the named insured . . . from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. [*Fahey* v. *Safeco Ins. Co. of America*, supra, 309] . . . [s]ee also General Statutes § 38a-336. Its purpose . . . is to place the insured in the *same* position as, but *no better* position than, the insured would have been had the underinsured tortfeasor been fully insured. . . . [U]nderinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor . . . ." (Internal quotation marks omitted.) *Hunte* v. *Amica Mutual Ins. Co.*, supra, 68 Conn. App. 538.

The same result is warranted here. Insofar as the plaintiff already had received $20,000 for injuries that later were determined to be compensable in the amount of only $6148.48, the effect of a judgment for $6148.48 is to provide for additional, duplicate recovery to the plaintiff. Although we acknowledge the court's reliance on the parties' understanding, by virtue of their stipulation, that the plaintiff would not actually receive an additional payment from the defendant; see footnote 10; we think the better practice is that a judgment accurately reflect any offset due as the result of payments already received from the tortfeasor or elsewhere. This is especially important in cases such as this one, where the parties' stipulation was not reduced to writing and the record does not otherwise include its precise terms. See footnote 9. Moreover, without an explicit offset reducing the verdict to zero, a judgment in the plaintiff's favor remains. Regardless of whether that judgment is to be satisfied, it indicates that the plaintiff is the prevailing party for purposes of costs; see *Russell* v. *Russell*, 91 Conn. App. 619, 630–31, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005); although he in fact did not succeed in proving his claim for underinsured motorists benefits. See *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 312.

In sum, the court's denial of the plaintiff's motions for additur and to set aside the verdict was improper because the verdict was internally inconsistent and likely based on misleading expert testimony, and the court's denial of the defendant's motion for judgment notwithstanding the verdict was improper because the plaintiff, having been awarded damages in an amount less than what he already had received from the tortfeasor, failed to prove his claim for underinsured motorists benefits. Upon remand, therefore, the court should determine a reasonable additur for noneconomic damages and give the parties an opportunity to accept the additur. If the parties do not accept the additur, a new trial as to damages should be held. If the amount of damages accepted by the parties after an additur or awarded by a jury after a new trial exceeds $20,000, the court should apply a $20,000 offset to the damages award and render judgment for the plaintiff in the amount of the difference. If the amount of damages accepted by the parties after an additur or awarded by a jury after a new trial does not exceed $20,000, the court should reduce the damages award to zero and render judgment in favor of the defendant.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.