BEVERLEE BARROWS ET AL. *v.* J.C. PENNEY COMPANY, INC., ET AL.
(AC 18473)

Lavery, Spear and Daly, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 19—officially released June 13, 2000

*John R. Williams*, with whom were *Anthony G. Apicella* and, on the brief, *Jessica Ranciato*, law student intern, for the appellant (named plaintiff).

*Barry P. Beletsky*, for the appellees (defendants).

*Opinion*

SPEAR, J. The named plaintiff, Beverlee Barrows,[2] appeals from the judgment of the trial court rendered after a jury verdict in her favor in the amount of $2000. She claims that the court improperly (1) refused to set aside the jury verdict of $1000 for past economic damages and $1000 for past noneconomic damages, (2)

---

[2] Donald Barrows, the husband of Beverlee Barrows, was a plaintiff in this action, but withdrew his action against all of the defendants. We refer in this opinion to Beverlee Barrows as the plaintiff.

allowed the defendants'[3] expert to testify to opinions that were not disclosed in accordance with Practice Book § 13-4 (4), and (3) admitted evidence that was not specially pleaded by the defendants pursuant to Practice Book § 10-50. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On April 6, 1993, the plaintiff went to the store of the named defendant J.C. Penney Company, Inc. (J.C. Penney), in the Connecticut Post Mall in Milford to return a pair of shoes. After returning the shoes, the plaintiff tried on several articles of clothing before leaving the store. The defendants Holly Herzman and Arthur Evans, who were employed by J.C. Penney as security guards, stopped the plaintiff approximately ten feet outside the store's exit and accused her of shoplifting.

The security guards brought the plaintiff back into the store and detained her in a room for about twenty-one minutes. After she was released, the plaintiff became dizzy and collapsed against a rack of clothing. She went to the Milford Hospital emergency room where she was treated for hypertension.[4]

The plaintiff brought an action against the defendants seeking damages for intentional false imprisonment and negligent false imprisonment. Thereafter, she filed a motion for summary judgment as to liability only on the first count, intentional false imprisonment. The court granted the plaintiff's motion for summary judgment,

[3] The defendants in this appeal are J.C. Penney Company, Inc., Holly Herzman and Arthur Evans. The plaintiff withdrew her claims against the defendants Robert Doyle and John Ralbovsky and, therefore, they are not parties to this appeal. We refer in this opinion to J.C. Penney Company, Inc., Holly Herzman and Arthur Evans as the defendants.

[4] The plaintiff had been suffering from hypertension for ten years prior to this incident. The condition was triggered anytime she was confronted with stressful events.

228

and the case was assigned for a jury trial on the issue of damages. Before the commencement of the hearing in damages, the plaintiff withdrew the second count of her complaint alleging negligent false imprisonment.

At the hearing in damages, the plaintiff sought to collect past and future economic damages, past and future noneconomic damages and punitive damages. The defendants did not contest the reasonableness of the plaintiff's medical bills. Through expert testimony, they did contest the causal relationship between the incident at the store and the plaintiff's alleged injuries. The plaintiff objected to some of the testimony of the defendants' expert, claiming that it was outside the scope of the defendants' disclosure made pursuant to Practice Book § 13-4 (4). The court overruled the plaintiff's objection and allowed the expert's testimony.

The jury returned a verdict in favor of the plaintiff in the amount of $2000, representing $1000 for past economic damages and $1000 for past noneconomic damages. No future economic damages, future noneconomic damages or punitive damages were awarded. The plaintiff filed a motion to set aside the jury verdict as to damages only and for additur. The court denied the plaintiff's motion and this appeal followed.

I

The plaintiff first claims that because the jury verdict was unreasonable, the court improperly refused to set it aside. We disagree.

"The trial court's refusal to set aside [a] verdict . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying [a motion] . . . to set aside [a] verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence

presented, the jury could fairly reach the verdict they did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995).

## A

The plaintiff claims that the jury verdict of $1000 for past economic damages is unreasonable and should be set aside because no combination of the medical bills introduced into evidence can add up to precisely $1000. We are unpersuaded.

First, the jury in this case rendered a general verdict for past economic damages with no interrogatories. "Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside." *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997). The rendering of a general verdict "coupled with the absence of interrogatories, [makes] it impossible for the trial court or this court to determine what factors the jury considered in making its award." Id. "We cannot speculate as to how the jury reached its figure." *Caruso* v. *Quickie Cab Co.*, 48 Conn. App. 459, 462, 709 A.2d 1154 (1998). "Although [most of the] evidence remained uncontroverted the jury [was] not obliged to accept it. On the other hand, [the jury was] at liberty to accept what part of [the evidence it] chose and factor [that

evidence] into [its] total calculations." *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 344, 430 A.2d 1 (1980).

Second, the extent of the plaintiff's injury was hotly contested. "The existence of conflicting evidence limits the court's authority to overturn a jury verdict. The jury is entrusted with the choice of which evidence is more credible and what effect it is to be given." (Internal quotation marks omitted.) *Childs* v. *Bainer*, supra, 235 Conn. 116. The plaintiff offered expert testimony that she suffers from permanent hypertension as a result of the incident at the defendant's store. The defendants offered expert testimony that the incident at the defendant's store caused only temporary, not permanent, hypertension. "[T]he medical testimony and opinions were conflicting to such an extent that the jury could have refused to credit [part of] the plaintiff's claims." *Beverly* v. *State*, 44 Conn. App. 641, 648, 691 A.2d 1093 (1997).

We, therefore, cannot say that the verdict is unreasonable or so shocks the sense of justice that it warrants reversal.

B

The plaintiff also claims that the jury verdict of $1000 for past noneconomic damages is unreasonable and should be set aside because it was tainted by the improper jury verdict for past economic damages. Because we uphold the jury verdict for past economic damages, we do not consider this claim.

II

The plaintiff next claims that the trial court improperly allowed the defendants' expert to testify to opinions not disclosed in accordance with Practice Book § 13-4 (4). We disagree.

"A trial court's decision on whether to impose the sanction of excluding the testimony of a party's expert witness rests within the court's sound discretion. . . . The action of the trial court is not to be disturbed unless it has abused its broad discretion, and in determining whether there has been such abuse every reasonable presumption should be made in favor of its correctness." (Internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 800, 614 A.2d 414 (1992).

The issue is whether the trial court abused its discretion by allowing testimony from the defendants' expert over the plaintiff's objection and claim that the testimony exceeded the scope of the defendants' disclosure. Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time . . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection . . . such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party . . . ."

Even if we assume, arguendo, that the defendants' disclosure did not comply with Practice Book § 13-4 (4), we do not find that the plaintiff suffered from any prejudice. Practice Book § 13-4 (4) is "intended to furnish a [party] with the details of [another party's] reliance on expert testimony in order to assist him with the preparation of his case. The rules of discovery are designed to make a trial less of a game of blindman's [buff] and more of a fair contest with the basic issues

and facts disclosed to the fullest extent possible." (Internal quotation marks omitted.) *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 280, 699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 657 (1997).

In this case, the defendants disclosed that they intended to call their expert about eighteen months prior to trial, and the plaintiff objected to the expert's testimony on various grounds. The court overruled the plaintiff's objection to preclude the testimony and ordered that the defendants' expert not be permitted to testify unless (1) the defendants' expert agreed to be deposed and (2) prior to the deposition, the defendants made certain disclosures. The plaintiff failed to depose the defendants' expert, and the defendants never disclosed the information that they were ordered to provide. The plaintiff thereafter did not attempt to seek any additional information regarding the opinion of the defendants' expert to assist her in the preparation of her case. As the court correctly determined: "The plaintiff has had ample opportunity . . . to present her case in a fair, reasonable, evidentiary, full disclosure manner."[5] We, therefore, cannot conclude that the court

---

[5] It also is important to note that the plaintiff's counsel declined the court's offer to allow the plaintiff an opportunity to cure any harm that could have possibly resulted from the defendants' alleged failure to disclose. At trial, the court stated: "Now, I would give you a reasonable opportunity to contact [your expert] and have him down here in order to listen to the testimony. . . . If you want to get on the phone, I'll go into hiatus and recess right now and give you a chance to get [your expert] down here. And if he wants to rebut anything [the defendants' expert] says, you may have that opportunity." The plaintiff's counsel, however, responded to the court's offer without any interest to cure. The plaintiff's counsel stated: "I thank you for the offer, Your Honor, but we won't do that because not only the expense but the fact that [our expert] has a tremendous operating schedule. My point is this, I don't agree that it's proper to let in by rebuttal testimony what they didn't disclose. That's not what his opinion is based on. His opinion is based upon what he has in [the disclosure]. And that's what he should be limited to and not go into other things that he didn't disclose, that he could have disclosed."

abused its discretion by admitting all of the testimony from the defendants' expert.

## III

The plaintiff finally claims that the trial court improperly admitted evidence that was not specially pleaded by the defendants pursuant to Practice Book § 10-50. We disagree.

Practice Book § 10-50 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. . . ."

"The distinction between matters which may be proved under a general denial and matters constituting special defenses, which must be specially pleaded, was enunciated in *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 327 A.2d 583 (1973), where [our Supreme Court] observed . . . that [t]he issues to be tried may be framed in several ways. A denial of a material fact places in dispute the existence of that fact. Even under a denial, a party generally may introduce affirmative evidence tending to establish a set of facts inconsistent with the existence of the disputed fact. . . . If, however, a party seeks the admission of evidence which is consistent with a prima facie case, but nevertheless would [independently] destroy the cause of action, the new matter must be affirmatively pleaded as a special defense." (Citations omitted; internal quotation marks omitted.) *Bernier* v. *National Fence Co.*, 176 Conn. 622, 629, 410 A.2d 1007 (1979).[6]

---

[6] The court in *Pawlinski* clarified the complexity of this theory using the following illustration from 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 127 (c) p. 521: "D is liable to P if a, b, and c are true unless d is also true. If d contradicts a, b, or c, then evidence of d may be admitted under a denial. If, however, the existence of d does not negate the existence of a, b, or c, but independently destroys liability, then evidence of d may

In this case, where the defendants have denied that there exists a causal connection between their actions and the plaintiff's alleged injuries, the denial is inconsistent with the plaintiff's allegations and does not independently destroy liability. The defendants' denial negates the existence of the plaintiff's allegation that the defendants' actions were the proximate cause of the plaintiff's injuries. We, therefore, conclude that the court properly admitted the defendants' evidence under a general denial.

The judgment is affirmed.[7]

In this opinion the other judges concurred.

be admitted only under a special defense." *Pawlinski* v. *Allstate Ins. Co.*, supra, 165 Conn. 7.

[7] The defendants originally filed a cross appeal and subsequently, pursuant to Practice Book § 63-4 (a) (1) (B), asked this court to consider in the event that we order a new trial whether summary judgment as to liability was proper. Because we affirm the judgment of the trial court, we do not consider this issue. The cross appeal is dismissed.

