******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MITCHELL DEESSO *v.* ROBERT LITZIE, JR.
(AC 38046)

DiPentima, C. J., and Mullins and Foti, Js.

*Argued October 24, 2016—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Edward F. Stodolink, judge trial referee.)

*Jeremy C. Virgil*, with whom, on the brief, were *Michael S. Samsel* and *Denise A. Krall*, for the appellant (plaintiff).

*Adam J. LaFleche*, for the appellee (defendant).

*Opinion*

MULLINS, J. In this tort action, the plaintiff, Mitchell DeEsso, appeals from the judgment of the trial court, accepting the jury's verdict and awarding him $5000 in economic damages. On appeal, the plaintiff claims that the trial court improperly denied his motions to set aside the verdict and to order additur because: (1) the jury's award of economic damages was contrary to the uncontested evidence of the plaintiff's medical bills and lost wages; and (2) the jury's decision to award zero noneconomic damages was inconsistent with its decision to award $5000 in economic damages. We affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history, are relevant to this appeal. On December 15, 2012, the plaintiff and the defendant, Robert Litzie, Jr., along with their wives and children, attended a youth basketball game at St. Joseph's Elementary School in Shelton. At some point during the game, the plaintiff's wife was told by her son that while he and some other children were playing, the defendant's son kicked him in the face. The plaintiff's wife then approached the defendant's son, and, after she asked who his parents were, the defendant's son pointed out the defendant to her. Thereafter, the plaintiff's wife and the defendant had three separate "confrontations" or "meetings" inside the school, in which they argued over whether the defendant's son had behaved inappropriately. The plaintiff was present during the third confrontation and was able to defuse the situation by convincing the defendant to walk away.

After the third confrontation, however, the defendant, the plaintiff's wife, and the plaintiff had yet another altercation outside the school. As the plaintiff and his wife and children were exiting the school, the defendant was driving his vehicle on the street in front of the school. The plaintiff's wife pointed at the defendant's vehicle or made some other type of hand gesture in the defendant's direction. In response, the defendant stopped the vehicle, exited it, and started shouting at the plaintiff's wife, who was standing near the sidewalk. As he shouted at the plaintiff's wife, the defendant also began to approach her. The plaintiff intercepted the defendant at the curb before he could reach the plaintiff's wife. The plaintiff positioned himself between his wife and the defendant.

At around the same time, several male bystanders also attempted to intervene and positioned themselves between the defendant and the plaintiff and his wife. As the defendant continued to approach the plaintiff, two of the male bystanders restrained the plaintiff by holding him back by his arms. A minor melee ensued, as there was "a lot of agitation on both sides" and "some pushing and shoving" and "a lot of pushing and pulling"

by the "group of people involved." Both the defendant and the plaintiff were pushing and pulling each other. At some point, one of the men and the defendant came into contact, which in turn caused that man's elbow to strike the plaintiff in the right shoulder.

In the course of the melee, the defendant's hand made contact with the plaintiff's glasses and knocked them off the plaintiff's face to the ground. This also caused the plaintiff to stumble back, lose his balance, and fall down on the ground. The plaintiff landed on his right arm. As the plaintiff started to get up, "a lot of [the] people [involved in the altercation]" were "trying to hold and tug and grab at [him]." In the course of standing up, and with the other men "trying to hold and pull" him, the plaintiff felt a "pop" in his right shoulder. It was at that point that the plaintiff felt a "sharp pain" run down his right arm, rendering him unable to lift the arm. By the time the plaintiff returned to his feet, the other individuals had moved the defendant away from the area, and the defendant eventually entered his vehicle and drove off.

After the altercation, the pain in the plaintiff's shoulder worsened, leading him to seek medical assistance from an orthopedic surgeon. The plaintiff informed the surgeon that he was "involved in a minor altercation" in which he was "held back by his right arm," that he felt a "pop" in his shoulder, and that he was "concerned he tore his rotator cuff." Sharing the plaintiff's concern that he tore his rotator cuff, the surgeon ordered that the plaintiff have an MRI.

As a result of the MRI, the plaintiff was diagnosed with a fully torn rotator cuff. According to the surgeon, the tear was caused by the altercation and, more specifically, was "consistent with someone having their arm pulled on." The plaintiff subsequently underwent a surgical repair of the tear and undertook several months of physical therapy to rehabilitate his shoulder. At the time of trial, the plaintiff's shoulder still had recovered by only 50 to 60 percent.

The plaintiff brought a personal injury action against the defendant, in which he sought damages for three claims sounding in negligence, recklessness, and intentional tort. Specifically, the plaintiff alleged that the defendant caused the plaintiff to sustain four injuries: (1) "full thickness tears of the posterior supraspinatus and infraspinatus tendons in the right shoulder necessitating surgical repair," (2) "weakness in the right shoulder," (3) "right shoulder contusion," and (4) "right shoulder sprain/strain."

With respect to the plaintiff's negligence claim, the plaintiff listed sixteen ways in which the defendant caused the plaintiff's injuries.[1] Regarding recklessness, the plaintiff claimed that the defendant caused the plaintiff's injuries by striking the plaintiff with his hand,

swinging his arms in an aggressive manner toward the plaintiff's head or shoulder, swinging his arms in an aggressive manner toward the plaintiff and necessitating others to intervene and restrain the defendant and the plaintiff, forcefully twisting the plaintiff's arm, and forcefully restraining the plaintiff's arm. The plaintiff's intentional tort claim alleged that the defendant assaulted and battered the plaintiff by striking the plaintiff with his hand and forcefully twisting the plaintiff's arm.

With respect to damages, the plaintiff claimed that he suffered both economic and noneconomic damages. The economic damages consisted of medical expenses and lost wages. The noneconomic damages were attributable to past and future pain and suffering.

In his amended answer to the plaintiff's complaint, the defendant denied the plaintiff's allegations and asserted the special defenses of comparative negligence, contributory recklessness, assumption of the risk, and self-defense.

At trial, the plaintiff offered the medical bills relating to the diagnosis and treatment of his shoulder injuries as an exhibit, and he called an employee from his business to testify as to the amount of lost wages that he incurred. The plaintiff's claim for economic damages totaled $61,483.34, consisting of $49,483.34 in past medical expenses and $12,000 in lost wages. The defendant did not contest the reasonableness of the plaintiff's medical expenses or lost wages. The defendant did challenge, however, the plaintiff's contention that the defendant's actions were the proximate cause of the plaintiff's shoulder injuries. In particular, by cross-examining the plaintiff's numerous fact witnesses and the physician who treated the plaintiff's injuries, the defendant elicited conflicting evidence as to whether he caused the plaintiff's rotator cuff tear. A brief review of such testimony follows and informs our review of the plaintiff's claims.

At trial, the plaintiff called Daniel Weiland, the orthopedic surgeon who diagnosed and repaired the plaintiff's rotator cuff tear. During his testimony, Weiland explained that his diagnosis that the plaintiff sustained a "full thickness rotator cuff tear" meant that his "supraspinatus" and "infraspinatus" tendons had been torn. He opined that this type of tear was "consistent with someone having their arm pulled on." Weiland also indicated that his diagnosis was based on the account of the altercation that had been related to him by the plaintiff, which was the following: "[The plaintiff] told me he was in an altercation . . . where someone pulled his arm, and he felt a pop and has since been unable to use his shoulder. . . . [H]e was in a fight . . . where his arm was pulled back, he felt a pop and then since then he's had difficulty with his shoulder."

Indeed, the plaintiff himself testified that it was "possible" that his shoulder injury "occurred because someone was pulling back on [his] arm . . . ." According to the plaintiff, the "pop" in his shoulder occurred when he was in the process of getting up from the ground, at which time "people [were] trying to hold and pull [him]." However, when asked by the defendant's counsel if he knew who was holding him back by his right arm, the plaintiff answered: "I have no idea [because] [t]here were so many people involved and it was a matter of seconds."

In addition to the plaintiff's own testimony, the testimony of other witnesses called into question whether the defendant pulled on the plaintiff's right arm and, therefore, caused the rotator cuff tear. The defendant denied ever pulling or grabbing the plaintiff and claimed that two other men had restrained the plaintiff by holding him back by his arms. Two other witnesses also testified that two men other than the defendant restrained the plaintiff by holding him back, and one witness testified that she did not observe *anyone* "restrain" or "hold [the plaintiff] back by his right arm."

Following the evidentiary portion of the trial, neither party submitted interrogatories to the jury. Ultimately, the jury returned a general verdict in favor of the plaintiff in the amount of $5000 for economic damages; it awarded zero noneconomic damages. With respect to the noneconomic damages, the court specifically asked the jury whether it had concluded that there were no proximately caused noneconomic damages. The jury acknowledged that it had made that conclusion.

Thereafter, the plaintiff filed a motion that requested the court to set aside the jury's verdict, order additur, or, in the alternative, order a new trial. In that motion, the plaintiff argued: (1) because the $5000 award of economic damages was contrary to the unchallenged evidence that the plaintiff's economic damages totaled $61,483.34, the court should increase the award or set it aside; and (2) the award of zero noneconomic damages should be set aside or increased because the jury's decision to award economic damages but no noneconomic damages was "fatal[ly] inconsistent." The court denied that motion. This appeal followed.

I

The plaintiff first claims that "[t]he jury's economic damages award was palpably unjust and legally inadequate" because "[t]here was no evidence introduced that would have led a reasonable jury to reach an even $5,000 in economic damages." According to the plaintiff, "[t]here was no logical breakdown of the [plaintiff's] uncontested medical bills or lost wages that would lead to $5,000," and, therefore, the trial court erred in denying his motion to set aside the verdict or to order additur. We disagree.[2]

We first set forth our standard of review and the general principles governing the discretion of the trial court to set aside a jury verdict or to order additur. "The trial court's refusal to set aside the verdict or to order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying the motions for additur and to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) *Beverly* v. *State*, 44 Conn. App. 641, 646–47, 691 A.2d 1093 (1997).

"[A]lthough the trial court has a broad legal discretion in this area, it is not without its limits. Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." (Internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 478, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001).

In the present case, the court rejected the plaintiff's claim that, because he presented unchallenged evidence of medical bills and lost wages amounting to $61,483.34, the jury's award of $5000 in economic damages was unreasonable. Specifically, the court explained: "As I recall the case, I think the real issue [was] the mechanism of injury, the basis of which your claim is based as to, as I recall the facts in the case, it was a very confusing situation. There were other actors involved. In fact, I think some other actors were in

contact with the plaintiff from time to time. . . . I can only imagine that the jury sorted it out as to the fact that if there was any claim as to the named defendant, then it was a rather nominal one, but to salve their conscience they entered a verdict of $5000. So I'll deny your motion to set aside the verdict because it's within the realm of expectation."

Upon reviewing the record, we conclude that the trial court did not abuse its discretion in refusing to set aside the jury's award of economic damages or to order an additur. On the basis of the evidence adduced at trial, we conclude that the award falls somewhere within the necessarily uncertain limits of fair and reasonable compensation and that it does not so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, mistake or corruption.

As a preliminary matter, we note that the parties in this case did not submit interrogatories to the jury, and, as a result, the jury returned a general verdict. We previously have stated that "[w]here there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside." *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997). In such a situation, "neither the trial court nor this court ha[s] any reasonable basis on which to break down the verdict"; id.; and it is "impossible . . . to determine what factors the jury considered in making its award." Id. Accordingly, not "know[ing] how or why the jury arrived at its determination of damages . . . [w]e cannot speculate as to how the jury reached its figure." *Caruso* v. *Quickie Cab Co.*, 48 Conn. App. 459, 462, 709 A.2d 1154 (1998).

This court previously has declined to reverse the denial of a plaintiff's claim for additur in part on the ground that the jury's award of economic damages was returned in a general verdict. See *Barrows* v. *J.C. Penny Co.*, 58 Conn. App. 225, 229–30, 753 A.2d 404, cert. denied, 254 Conn. 925, 761 A.2d 751 (2000). In *Barrows*, the plaintiff brought an action for false imprisonment, alleging that the defendants' conduct caused her to sustain permanent hypertension. Id., 230. The plaintiff's claim for economic damages consisted of $7149.54 in past medical expenses that she incurred in connection with the treatment of her alleged hypertension.[3] *Barrows* v. *J.C. Penny Co.*, Conn. Appellate Court Records & Briefs, January Term, 2000, Appellant's Brief pp. 6–7. The defendants did not challenge the reasonableness of those expenses. *Barrows* v. *J.C. Penny Co.*, supra, 228. Even though the jury returned a plaintiff's verdict, it awarded her only $1000 in past economic damages. Id.

On appeal to this court, the plaintiff in *Barrows* argued that the trial court erred in refusing to set aside the award of economic damages. Id., 229. Specifically,

she contended that "[s]ince there was no evidence challenging the reasonableness of [the past medical expenses], the only issue before the jury was whether some, any or all of them were proximately caused by the actions of the defendants." *Barrows* v. *J.C. Penny Co.*, Conn. Appellate Court Records & Briefs, January Term, 2000, Appellant's Brief p. 6. Therefore, because there was no combination of the $7149.54 in past medical bills that precisely added up to $1000, the jury's award was unreasonable. Id.; *Barrows* v. *J.C. Penny Co.*, supra, 58 Conn. App. 229.

Relying in part on the fact that the award was unaccompanied by interrogatories and, thus, resulting in a general verdict, this court rejected the plaintiff's argument. *Barrows* v. *J.C. Penny Co.*, supra, 58 Conn. App. 229–30. We declined to speculate as to how the jury accepted and rejected certain components of the $7149.54 in medical bills to award exactly $1000 in past economic damages. We reasoned that, "[a]lthough [most of the] evidence remained uncontroverted the jury [was] not obliged to accept it. . . . [The jury was] at liberty to accept what part of [the evidence it] chose and factor [that evidence] into [its] calculations." (Internal quotation marks omitted.) Id.

Here, as in *Barrows*, the plaintiff presented unchallenged evidence of the amount and reasonableness of his medical bills and lost wages. Specifically, the plaintiff offered numerous medical bills relating to the diagnosis and treatment of his shoulder injuries that totaled $49,483.34. Additionally, he presented uncontested evidence that, having missed four weeks of work at a weekly salary of $3000 per week, he sustained $12,000 in lost wages. However, the general verdict rendered in this case limits our ability to evaluate the reasoning behind the jury's awarding of $5000 in economic damages. See id., 229 ("a general verdict . . . [makes] it *impossible* for . . . this court to determine what factors the jury considered in making its award" [emphasis added; internal quotation marks omitted]).

Thus, notwithstanding that the evidence of the plaintiff's economic damages was uncontroverted, the jury was not obliged to accept that evidence wholesale. Rather, it was free to accept any portion it chose and factor that evidence into its calculations. Therefore, the plaintiff's request to set aside the jury's verdict or to order an additur ultimately would require us to speculate as to what combination of medical bills and/or lost wages the jury found the defendant liable for in awarding $5000. As in *Barrows*, we decline to engage in such speculation.

Furthermore, another ground for not disturbing the jury's award of economic damages is that the defendant vigorously contested the causal relationship between the plaintiff's injuries and his conduct. We previously have held that a jury may award a plaintiff less than

the full amount of claimed economic damages where there is conflicting evidence as to whether the defendant caused the full extent of the claimed economic damages. See, e.g., *Bligh* v. *Travelers Home & Marine Ins. Co.*, 154 Conn. App. 564, 571–74, 109 A.3d 481 (2015) (trial court properly denied additur where plaintiff claimed $174,920.52 in economic damages and jury awarded $65,000 because jury "only awarded those expenses that [it] found to be reasonably necessary and proximately caused by the . . . [defendant's] negligence" [internal quotation marks omitted]); *Schettino* v. *Labarba*, 82 Conn. App. 445, 446–50, 844 A.2d 923 (2004) (upholding award of economic damages for $450 where plaintiff claimed $6631 in economic damages because parties contested issue of causation); *Barrows* v. *J.C. Penney, Co.*, supra, 58 Conn. App. 230 (jury could award only $1000 of uncontested medical bills totaling $7149.54 because "extent of the plaintiff's injury was hotly contested" by expert testimony that defendants' conduct "caused only temporary, not permanent, [injuries]"); *Trumpold* v. *Besch*, 19 Conn. App. 22, 32 n.8, 561 A.2d 438 (1989) (affirming denial of additur where jury, instead of awarding full amount of medical bills submitted by plaintiff, awarded "only those [medical] bills submitted which [it] fe[lt] [were] applicable to the accident" [internal quotation marks omitted]), cert. denied, 212 Conn. 812, 565 A.2d 538 (1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990).

Thus, a jury may award only part of a plaintiff's claimed amount of damages where he has alleged that such damages arose from *multiple* injuries, but there is a reasonable basis in the evidence for the jury to conclude that the defendant caused only *some* of the injuries. See, e.g., *Esaw* v. *Friedman*, 217 Conn. 553, 555, 566–67, 586 A.2d 1164 (1991) (award not inadequate where plaintiff alleged she suffered acute injury to her cervical and lumbar spine, severe headaches, vertigo and nausea, severe pain and numbness in her arms, shoulders and chest, legs, knees and feet, and an aggravation of a prior neck and back injury because "[t]here was ample evidence, which the jury was entitled to credit, that *many* of the plaintiff's injuries were [not] the result . . . of the accident caused by the defendant" [emphasis added]); *Rickert* v. *Fraser*, 152 Conn. 678, 679, 681, 211 A.2d 702 (1965) (affirming award of less than full amount of claimed damages where plaintiff alleged to have sustained "a permanent neck injury with a fracture of a spur of the cervical spine, a facial injury resulting in a permanent drooping eyelid, and an injury to a nerve in the neck" because "jury could have reasonably found . . . that the plaintiff had apparently sustained a strain of the neck and a contusion to the low back and that the other claimed injuries, if any, were not proved to have been caused by this accident" [internal quotation marks omitted]).

In the present case, the plaintiff alleged in his com-

plaint that, as a result of the defendant's conduct, he sustained four injuries: (1) "full thickness tears of the posterior supraspinatus and infraspinatus tendons in the right shoulder necessitating surgical repair," (2) "weakness in the right shoulder," (3) "right shoulder contusion," and (4) "right shoulder sprain/strain." The plaintiff further alleged that those injuries caused him to sustain economic damages in the form of "medical care and attention" and "lost wages."[4] At trial, the plaintiff presented (1) uncontested medical bills reflecting $49,483.34 expended for diagnostic services, treatment, surgery and physical therapy relating to his shoulder injuries, and (2) unchallenged testimonial evidence that he missed four weeks of work and, consequently, sustained $12,000 in lost wages.

The defendant's strategy at trial was to challenge the causal connection between the plaintiff's shoulder injuries and the defendant's conduct by cross-examining the plaintiff's numerous fact witnesses and the physician who treated the plaintiff's injuries.

In particular, the jury heard conflicting and inconsistent evidence as to whether the defendant caused the plaintiff's most significant alleged injury, which was the rotator cuff tear.

Although the physician who treated the plaintiff testified that the rotator cuff tear was "consistent with someone having their arm pulled on,"[5] there was conflicting testimony as to whether the plaintiff's arm was ever pulled during the altercation and, more importantly, whether it was the defendant who pulled it. For instance, it is true that one witness testified that the plaintiff "[was] pulled by [the defendant]" at some point during the altercation. However, the rest of the testimony presented at trial also revealed that (1) there were several individuals involved in the melee; (2) many of those individuals were pushing, pulling, and shoving one another; and (3) two individuals *other than the defendant* restrained the plaintiff by grabbing or holding back his arms.

Indeed, the plaintiff's own testimony seemed to undercut the causal relationship between his torn rotator cuff and the defendant's conduct. The plaintiff stated that he did not feel a "pop" and pain in his arm until he was getting off the ground, and as some of the individuals were "trying to hold and tug and grab at [him]." Moreover, he could not recall *who* specifically may have been grabbing his right arm at that point.

As demonstrated by the foregoing, the evidence regarding the causal relationship between the defendant's conduct and the plaintiff's torn rotator was in conflict. Accordingly, the jury could have resolved the conflicting evidence in the defendant's favor and found that the defendant did not cause the rotator cuff tear. At the same time, however, the jury still could have

found that the defendant caused the plaintiff to sustain one or more of the other injuries alleged in the plaintiff's complaint.

Consequently, if the jury found that the defendant caused only some of the plaintiff's alleged injuries, then it reasonably could have awarded the portion of the economic damages that it had determined was attributable to those injuries. The overwhelming majority of the medical bills concerned the surgical repair of the rotator cuff tear and the related postsurgery physical therapy. Therefore, if the jury found that the defendant did not cause the rotator cuff tear, which it certainly could have based on the evidence presented, then it would have acted reasonably in refusing to award damages for a significant amount of the medical expenses. On the basis of the evidence presented at trial, we conclude that the jury's award was a reasonable composite of the parts of the medical expenses and lost wages that it reasonably could have determined were attributable to the injuries that the defendant actually caused the plaintiff to sustain.

Accordingly, in affording every reasonable presumption in favor of the correctness of the trial court's denial of the plaintiff's motion to set aside the verdict, we conclude that the court did not abuse its discretion in refusing to set aside the jury's award of economic damages. The jury's award falls somewhere within the necessarily uncertain limits of fair and reasonable compensation and does not so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, mistake or corruption.

II

The plaintiff's second claim is that the trial court erred in denying his motion to set aside the jury's award of zero noneconomic damages. Specifically, the plaintiff argues that the court should have set aside the award because the jury's awarding of some economic damages but no noneconomic damages was internally inconsistent, "unreasonable," and "legally inadequate." We disagree.

We first set forth the relevant legal principles governing a jury's discretion in awarding noneconomic damages. "It is well established that in Connecticut a jury's decision to award economic damages does not trigger, as a matter of law, an automatic award of noneconomic damages. Our Supreme Court has articulated a special standard for the review of verdicts like the one at issue here to determine whether inconsistency renders them legally inadequate. . . . In *Wichers* v. *Hatch*, 252 Conn. 174, 188, 745 A.2d 789 (2000), [the Supreme Court] held that trial courts, when confronted with jury verdicts awarding economic damages and zero noneconomic damages, must determine on a case-by-case basis whether a verdict is adequate as a matter of law. . . .

"Under *Wichers*, [r]ather than decide that an award of only economic damages is inadequate as a matter of law, the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do. . . .

"Thus, pursuant to *Wichers* and its progeny, [a] plaintiff [is] not entitled to an award of noneconomic damages simply because the jury awarded her economic damages. On the contrary, [a] plaintiff, as the party claiming noneconomic damages, had the burden of proving them with reasonable certainty. . . . Simply stated, [where] the plaintiff claim[s] noneconomic damages . . . she ha[s] the burden of proof to show that she experienced pain as the result of the accident." (Citations omitted; internal quotation marks omitted.) *Melendez* v. *Deleo*, 159 Conn. App. 414, 418–19, 123 A.3d 80 (2015).

The following additional facts are pertinent to our review of the plaintiff's second claim. The plaintiff sought to establish a $297,360 claim for noneconomic damages by offering the testimony of numerous witnesses, including himself and his wife. The plaintiff claimed that both past and future pain and suffering had resulted and would continue to result from the rotator cuff tear and its attendant surgical repair. According to Weiland, the orthopedic surgeon who treated the plaintiff, the plaintiff sustained a permanent 5 percent impairment rating to his right shoulder as a result of the tear and surgery. Thus, the plaintiff claimed that this impairment had rendered him unable to, inter alia, exercise, play sports, work, perform household chores, and teach sports to his children, all of which were activities that he had claimed to actively enjoy before the rotator cuff tear.

In rendering its verdict, however, the jury awarded no noneconomic damages for the plaintiff's alleged past and future pain and suffering. In fact, upon being asked by the court, the jury specifically confirmed that it found no proximately caused noneconomic damages. The plaintiff subsequently filed a motion requesting that the court set aside the award or order additur on the ground that the jury's decision to award economic damages but no noneconomic damages was "fatal[ly] inconsistent." The court denied that motion, explaining: "As I recall, I canvassed the jurors when we took the verdict and asked them whether they had found that the plaintiff had proved by a proximate cause that he sustained noneconomic damages with all his economic damages;

and they said no, that they were convinced that there was no proof, at least not preponderance of the evidence of noneconomic damages and therefore they rejected that claim."

Having reviewed the record, we conclude that, because the jury could have determined that the plaintiff did not carry his burden of proving that the defendant caused the plaintiff's pain and suffering that was related to the rotator cuff tear, the trial court did not err in refusing to set aside the award of noneconomic damages. The plaintiff's claim regarding the award of noneconomic damages is rendered unsound by the same flaw that undercut his claim regarding the award of economic damages. That is, both claims fail to recognize that the jury could have awarded less than the full amount of claimed damages upon determining that the plaintiff did not prove that the defendant caused the full extent of the injuries related to the claimed damages. As set forth in part I of this opinion, the jury reasonably could have concluded that the defendant caused the plaintiff to suffer some, but not all, of the alleged injuries, and that he did not cause the rotator cuff tear.

The plaintiff's second claim, nevertheless, is premised expressly on the notion that the jury necessarily concluded that the defendant caused the plaintiff's rotator cuff tear. For the reasons previously discussed, it was within the province of the jury to conclude to the contrary. Thus, the jury was not required to award noneconomic damages for the alleged pain and suffering that the plaintiff claimed was attendant to the rotator cuff tear and the resulting surgery, physical therapy, and partial permanent impairment. Indeed, it would have been incongruous for the jury to have awarded noneconomic damages for an injury for which it already had declined to award economic damages. In other words, if the defendant was not responsible for the rotator cuff tear and the actual cost of the surgery, treatment, and physical therapy related thereto, then he necessarily would not be responsible for the pain and suffering alleged to have resulted from the surgery, treatment, and physical therapy.

Therefore, the only noneconomic damages that the jury would have awarded, if any, would have been those that it had determined to have resulted from the other less severe injuries alleged by the plaintiff and caused by the defendant. Because these injuries were less severe than the rotator cuff tear, the jury reasonably could have concluded that these injuries, perhaps in contrast to the rotator cuff tear, caused the plaintiff little or no pain and suffering. Accordingly, the jury reasonably could have concluded that the plaintiff did not sustain any compensable pain and suffering that was proximately caused by the defendant.

We are not persuaded by the defendant's reliance on cases in which our appellate courts have set aside a

jury's verdict that awarded economic damages but no noneconomic damages. See, e.g., *Schroeder* v. *Traingulum Associates*, 259 Conn. 325, 789 A.2d 459 (2002); *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 886 A.2d 461 (2005), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006); *Elliott* v. *Larson*, 81 Conn. App. 468, 840 A.2d 59 (2004).

Those cases are factually distinguishable from the present case because the juries in those cases awarded " 'virtually all' of [the] plaintiff[s'] claimed economic damages."[6] *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, supra, 92 Conn. App. 487–89 (jury's award of *entire* amount of economic damages sought and no noneconomic damages was "internally inconsistent" because "finding that the plaintiff, by virtue of the accident, had suffered an injury requiring treatments and medication, the purpose of which was to alleviate pain and to improve functioning, the jury necessarily found that he had experienced pain and decreased functioning . . . [and] should have awarded noneconomic damages to compensate him for that pain and decreased functioning"). See also *Schroeder* v. *Triangulum Associates*, supra, 259 Conn. 332 ("[u]nder these circumstances, the jury reasonably could not have found the defendant to be responsible initially for the *full amount* of the plaintiff's economic damages, but not liable for any noneconomic damages" [emphasis added]); *Elliott* v. *Larson*, supra, 81 Conn. App. 477 (concluding that trial court properly exercised discretion in granting plaintiff's motion for additur, where jury failed to award noneconomic damages even though it awarded plaintiff all claimed medical expenses).[7]

In the present case, although the plaintiff claimed $61,483.34 in economic damages, the jury awarded him only $5000, which, rather than representing "virtually all" of the claimed economic damages, represents only a small fraction of that amount. The overwhelming majority of the claimed economic damages directly pertained to the surgical repair and rehabilitation of the plaintiff's torn rotator cuff. Having determined that the jury reasonably could have found that the defendant did not cause the economic damages flowing from the rotator cuff tear, it would be consistent, rather than inconsistent, for the jury also to conclude that the defendant did not cause the substantial noneconomic damages attributable to that injury.

Accordingly, in affording every reasonable presumption in favor of the correctness of the trial court's denial of the plaintiff's motion to set aside the verdict, we conclude that the court did not abuse its discretion in refusing to set aside the jury's award of zero noneconomic damages. The jury's award falls somewhere within the necessarily uncertain limits of fair and reasonable compensation and does not so shock the sense of justice as to compel the conclusion that the jury was

influenced by partiality, mistake, or corruption.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Specifically, those included the defendant's (1) failure to remain in his vehicle, (2) failure to return to his vehicle, (3) failure to drive away promptly, (4) failure to use reasonable care to prevent his body from coming into contact with a nonparty who was knocked off balance and fell into the plaintiff, (5) failure to use reasonable care to prevent his body from coming into contact with a nonparty who was knocked off balance, who then came into contact with the plaintiff, (6) failure to use reasonable care while moving on or about snow and/or ice, (7) failure to use reasonable care when pushing the plaintiff who was standing on or about snow and/or ice, (8) failure to use reasonable care when pulling the plaintiff, who was standing on or about snow and/or ice, (9) failure to use reasonable care while moving around the sidewalk and street area where there was a gathering of people, (10) failure to use reasonable care when pushing the plaintiff, who was standing on or about the curb of the sidewalk and the street, (11) failure to use reasonable care when pulling the plaintiff, who was standing on or about the curb of the sidewalk and street, (12) failure to reasonably control his body and/or his appendages, (13) swinging of his arm in an unreasonably close proximity to the plaintiff, (14) use of an unreasonable amount of force to hold onto the plaintiff's arm, (15) acting in an unreasonably aggressive manner toward the plaintiff and/or his wife that caused others to restrain the plaintiff, and (16) failure to keep his hands from contacting the plaintiff.

[2] The plaintiff's claim for additur is premised on the notion that by returning a general verdict and awarding some economic damages, the jury necessarily found that the defendant was liable for *at least half* of his undisputed medical expenses and lost wages. Specifically, the plaintiff highlights (1) that he raised three claims as the basis of the defendant's liability— intentional tort, recklessness, and negligence—and (2) that the defendant asserted the special defense of comparative negligence. The plaintiff reasons that if the jury found the defendant liable on the basis of either intentional or reckless conduct, then he would be entitled to the full $61,483.34 in undisputed economic damages, regardless of whether the jury found comparative negligence on his behalf. If the jury found the defendant liable on the basis of negligence, as long as the plaintiff was not more negligent than him; see General Statutes § 52-572h (b); the plaintiff would be entitled to at least half of his undisputed medical expenses and lost wages, which is $30,741.67. Thus, the plaintiff maintains that, pursuant to this state's comparative fault scheme, $30,741.67 equals the smallest recovery that the jury could award and still render a plaintiff's verdict. Accordingly, he asks that the award of economic damages be increased to at least $30,741.67. We reject this claim.

We agree with the plaintiff's general observation that "a general verdict without interrogatories" makes it "impossible to know the jury's precise findings." However, we do not agree with his contention that the general verdict in the present case somehow defies that observation, insofar as the jury *necessarily* found the defendant liable for at least half of the amount in claimed economic damages. As we explain later in this opinion, even though the amount and reasonableness of the claimed economic damages were undisputed, the parties hotly contested the issue of whether the defendant proximately caused the injuries to which those damages were allegedly attributable. Accordingly, we do not know whether, on that basis, the jury rejected some part of the plaintiff's claim for economic damages. Thus, the scenarios proposed by the plaintiff are simply unfounded assumptions that he speculates the jury must have relied on in rendering a verdict and calculating damages. Given that the parties did not submit any interrogatories, and, therefore, the jury returned a general verdict, we cannot resort to such speculation. See *Caruso* v. *Quickie Cab Co.*, 48 Conn. App. 459, 462, 709 A.2d 1154 (1998); *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997).

[3] As presented in the plaintiff's appellate brief in *Barrows*, the medical expenses consisted of the following: (1) $246 for "Chamberlain Ambulance," (2) $152.53 for "Milford Hospital Emergency Room," (3) $4526.78 for "Cardiology Associates," (4) $150.19 for "Burt Medical Laboratory," (5) $1884.54 for "Miscellaneous Prescription Drugs," (6) $147.40 for "Quest (Metpath) Diagnostics," (7) $29.30 for "Quest Diagnostics," and (8) $12.80 for "Diagnostic Medical Laboratory." *Barrows* v. *J.C. Penny Co.*, Conn. Appellate Court Records & Briefs, January Term, 2000, Appellant's Brief pp. 5-6.

[4] The trial court read the plaintiff's complaint in its entirety to the jury during its instruction.

[5] The plaintiff also testified that it was "possible" that his "shoulder injury occurred because someone was pulling back on [his] arm . . . ."

[6] The plaintiff also relies on *Snell* v. *Beamon*, 82 Conn. App. 141, 842 A.2d 1167 (2004). *Snell* is distinguishable from the present case in two significant ways. First, the defendants in that case did not challenge the causal relationship between the defendants' conduct and the plaintiff's claimed economic and noneconomic damages. Id., 143. Second, in *Snell*, we *upheld* the *granting* of additur; id., 145; whereas in the present case the plaintiff has asked us to *reverse* the *denial* of additur. In cases involving *either* the granting or denial of additur, we apply our deferential abuse of discretion standard. Id.; *Beverly* v. *State*, supra, 44 Conn. App. 646. Accordingly, in reviewing the plaintiff's claim, we are mindful that "the trial court's refusal to set aside the verdict or to order an additur is entitled to great weight and [that] every reasonable presumption should be given in favor of its correctness." *Beverly* v. *State*, supra, 646.

[7] The plaintiff also suggests that this court has upheld verdicts that award economic damages but no noneconomic damages only where there was evidence that the plaintiff suffered from preexisting injuries. Although in some cases we have relied on such evidence in determining that an award of no noneconomic damages was proper; see *Fileccia v. Nationwide Property & Casualty Ins. Co.*, supra, 92 Conn. App. 488 (listing cases where "jury reasonably could have concluded that the prior condition was the cause of the pain alleged, rather than the tortious actions of the defendant"); we do not read those cases as establishing that, in the absence of such evidence, an award of no noneconomic damages is per se unreasonable. See, e.g., *Melendez* v. *Deleo*, supra, 159 Conn. App. 424 (trial court did not abuse discretion in refusing to set aside verdict that awarded economic damages but no noneconomic damages even though defendant did not claim that plaintiff suffered from preexisting injuries).

_____